ROSEN LIVINGSTON & CHOLST LLP
Deborah B. Koplovitz, Esq.
Peter I. Livingston, Esq.
275 Madison Avenue, Suite 500
New York, New York 10016
Telephone: (212) 687-7770
Telefax: (212) 687-8030

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEIMING CHEN,<br><br>                              Plaintiff,<br><br>        v.<br><br>YING-JEOU MA, The President of the<br>Republic of China, Taiwan (ROC), and HSI-<br>LUNG LEE, The Chief of the Bureau of Civil<br>Affairs, Government of Kinmen County, John<br>Does & Mary Roes,<br><br>                              Defendants. | Case No. 12-cv-05232 (NRB)<br>Judge Naomi Reice Buchwald |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT
<u>AND TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

I.      Introduction ................................................................................................1

II.     Status of Taiwan, the Taipei Economic and Cultural Representative
        Office (TECRO), and the American Institute in Taiwan (AIT) Under
        U.S. Law ....................................................................................................1

III.    Procedural Background ...............................................................................3

III.    Argument ....................................................................................................8

        A.      The Default Should Be Set Aside Pursuant to Rule 55(c) for
                Good Cause ......................................................................................8

                1.      Standards For Setting Aside a Default Under Rule
                        55(c) .......................................................................................8

                2.      President Ma and Chief Lee Are Presenting Meritorious
                        Defenses .................................................................................9

                        a.      President Ma and Chief Lee Are Immune from
                                the Jurisdiction of this Court.................................10

                                i.      President Ma Is Immune As a Current
                                        Head of State .............................................11

                                ii.     Chief Lee and President Ma Are Immune
                                        Under the Doctrine of Foreign Official
                                        Immunity ...................................................13

                        b.      President Ma's Head of State Immunity Renders
                                Him Inviolable and Hence Immune from Service
                                of Process .............................................................14

                        c.      Chen Has Not Presented Adequate Evidence that
                                President Ma  and Chief Lee Were Properly
                                Served with Process ...............................................16

                        d.      Lack of Standing ..................................................18

                        e.      Lack of Privity and Failure to Sue the Real Party
                                in Interest .............................................................18

                        f.      Plaintiff Fails to State a Claim Upon Which Relief

        May Be Granted ................................................................19

   3.   Default Was Not Willful ..............................................21

   4.   Setting Aside the Default Will Not Prejudice the
        Plaintiff .......................................................................22

IV.  Conclusion ................................................................................23

## TABLE OF AUTHORITIES

**CASES**

*Angellino v. Royal Family Al-Saud*,
   681 F.3d 463 (D.C. Cir. 2012) ................................................................16

*Bogle-Assegai v. Conn.*,
   470 F.3d 498 (2d Cir. 2006) ..................................................................16

*Davis v. Musler*,
   713 F.2d 907 (2d Cir. 1983) ..................................................................22

*Devi v. Rajapaksa*,
   2012 U.S. Dist. LEXIS 127825 (S.D.N.Y. Sept. 4, 2012) ....................................11

*Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*,
   631 F.3d 42 (2d Cir. 2011) ..................................................................20

*District of Columbia Citizens Ass'n v. Bd. of Zoning Adjustment*,
   530 A.2d 1163 (D.C. App. 1987) ..........................................................2, 3

*Dune Deck Owners Corp. v. Liggett*,
   85 A.D.3d 1093 (2d Dept. 2011) ...........................................................20

*Enron Oil Corp. v. Diakuhara*,
   10 F.3d 90 (2d Cir. 1993) ..............................................................8, 9, 10

*Errico v. Stryker Corp.*,
   2010 U.S. Dist. LEXIS 133567 (S.D.N.Y. Dec. 14, 2010) ...................................19

*Ex-Im Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*,
   2005 U.S. Dist. LEXIS 8902 (S.D.N.Y. May 11, 2005) .......................................17

*First Fidelity Bank, N.A. v. The Gov't of Antigua and Barbuda*,
   877 F.2d 189 (2d Cir. 1989) ..................................................................10

*First Investors Corp. v. Liberty Mut. Ins. Co.*,
   152 F.3d 162 (2d Cir. 1998) ..................................................................19

*Gomes v. ANGOP*,
   2012 U.S. Dist. LEXIS 119049 (E.D.N.Y. Aug. 22, 2012) .....................11, 12, 13

*Heaney v. Gov't of Spain*,
   445 F.2d 501 (2d Cir. 1971) ...............................................................11, 14

*Hellenic Lines Ltd. v. Moore*,
    345 F.2d 978 (D.C. Cir. 1965) ...................................................................14

*In re Doe*,
    860 F.2d 40 (2d Cir. 1988)...............................................................11, 14

*Julien J. Studley, Inc. v. N.Y. News*,
    70 N.Y.2d 628 (1987) .................................................................................20

*Kao Hwa Shipping Co., S.A. v. China Steel Corp.*,
    816 F. Supp. 910 (S.D.N.Y. 1993) ..........................................................2

*Kentucky v. Graham*,
    473 U.S. 159 (1985)......................................................................................5

*Lafontant v. Aristide*,
    844 F. Supp. 128 (E.D.N.Y. 1994) .................................................11, 15

*Liu v. Republic of China*,
    892 F.2d 1419 (9th Cir. 1989) ..................................................................2

*Marine Trading v. Naviera Com. Naylamp, S.A.*,
    879 F. Supp. 389 (S.D.N.Y. 1995) ........................................................17

*Matar v. Dichter*,
    563 F.3d 9 (2d Cir. 2009)..........................................................................13

*Meehan v. Snow*,
    652 F.2d 274 (2d Cir. 1981)........................................................................8

*Millen Indus. v. Coordination Council*,
    855 F.2d 879 (D.C. Cir. 1988) ..................................................................2

*New York Chinese TV Programs v. U.E. Enter.*,
    954 F.2d 847 (2d Cir. 1992).......................................................................2

*OS Recovery, Inc. v. One Group Int'l*,
    234 F.R.D. 59 (S.D.N.Y. 2005) ..............................................................16

*Pan Am. World Airways, Inc. v. Vetements, Inc.*,
    2010 U.S. Dist. LEXIS 97713 (S.D.N.Y. Sept. 17, 2010)....................19

*Peralta v. Heights Med. Ctr., Inc.*,
    485 U.S. 80 (1988).....................................................................................15

*Premium Mortgage Corp. v. Equifax, Inc.*,
  583 F.3d 103 (2d Cir. 2009)...............................................................18

*Sabbithi v. Al Saleh*,
  605 F. Supp. 2d 122 (D.D.C. 2009) .....................................................15

*Samantar v. Yousuf*,
  130 S. Ct. 2278 (2010) .............................................10, 11, 12, 14, 19

*Sartor v. Toussaint*,
  70 Fed. Appx. 11 (2d Cir. 2002) ....................................................15, 21

*Seaver v. Ransom*,
  224 N.Y. 233 (1918) .............................................................................18

*Sibley v. Jamestown Bd. of Pub. Util.*,
  2012 U.S. Dist. LEXIS 97712 (W.D.N.Y. July 13, 2012)....................20

*Smith v. Ghana Com. Bank*,
  2012 U.S. Dist. LEXIS 99735 (D. Minn. June 18, 2012).....................11

*Suffolk County v. Long Island Lighting Co.*,
  728 F.2d 52 (2d Cir. 1984)...................................................................19

*Swarna v. Al-Awadi*,
  622 F.3d 123 (2d Cir. 2010)......................................................21, 22, 23

*Tachiona v. Mugabe*,
  386 F.3d 205 (2d Cir. 2004)............................................................14, 15

*Taiwan v. United States District Court*,
  128 F.3d 712 (9th Cir. 1997) .................................................................3

*Tecnart Industria e Comercio Ltda. v. NOVA Fasteners Co.*,
  107 F.R.D. 283 (E.D.N.Y. 1985) ..............................................9, 10, 22

*Wagstaff-El v. Carlton Press Co.*,
  913 F.2d 56 (2d Cir. 1990)........................................................9, 10, 22

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
  8 N.Y.3d 422 (2007) ............................................................................20

*Yousuf v. Samantar*,
  699 F.3d 763 (4th Cir. 2012) ...................................................10, 11, 13

**RULES**

Federal Rule of Civil Procedure 4 ................................................................... *passim*

Federal Rule of Civil Procedure 12 ...................................................................1

Federal Rule of Civil Procedure 19 ............................................................18, 19

Federal Rule of Civil Procedure 55 .............................................................8, 22

Federal Rule of Civil Procedure 60 ...................................................................9

**STATUTES**

Foreign Sovereign Immunities Act,
     28 U.S.C. §§ 1330(a), 1602 *et seq.*, 1605, 1608 .......................................... *passim*

Taiwan Relations Act,
     22 U.S.C. §§ 3301-3316 ("TRA") ............................................................... *passim*

**OTHER MATERIALS**

Website of the Office of the President of the Republic of China (Taiwan),
     http://english.president.gov.tw/Default.aspx?tabid=454 ......................................12

Wikipedia page,
     http://en.wikipedia.org/wiki/Taiwan.......................................................................3

## I.      Introduction

The Clerk of the Court entered default in this case on December 13, 2012, against two of the Defendants, (1) the current President of the Republic of China (Taiwan), Ying-jeou Ma ("President Ma"), and (2) the Chief of the Bureau of Civil Affairs, Government of Kinmen County, Republic of China (Taiwan), Hsi-Lung Lee ("Chief Lee"). The default should be set aside pursuant to Federal Rule of Civil Procedure 55(c) for "good cause," and the Complaint (Dkt. 1) against President Ma and Chief Lee should be dismissed under Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), 12(b)(6), and 12(b)(7) for five reasons: (a) Defendants are immune from the jurisdiction of this Court, (b) President Ma is immune from service of process, (c) there is insufficient evidence that either President Ma or Chief Lee were served with valid process, (d) Plaintiff lacks standing to sue, (e) the named Defendants are not parties to the contract at issue in this case, and (f) Plaintiff fails to state a claim on which relief may be granted.

## II.     Status of Taiwan, the Taipei Economic and Cultural Representative Office (TECRO), and the American Institute in Taiwan (AIT) Under U.S. Law

On January 1, 1979, the United States withdrew diplomatic recognition of the governing authorities on Taiwan, that is, the Republic of China ("ROC"), as the government of China. Nevertheless, by virtue of the Taiwan Relations Act, 22 U.S.C. §§3301-3314 ("TRA"), Taiwan is treated under U.S. law as if de-recognition had not occurred. *See* 22 U.S.C. §§3303(b)(1),[1] (b)(7),[2] 3314.[3] It is well-established in this Circuit and others that Taiwan is, under U.S. law,

---

[1] Section 3303(b)(1) provides: "Whenever the laws of the United States refer or relate to foreign countries, nations, states, governments, or similar entities, such terms shall include and such laws shall apply with respect to Taiwan."

[2] Section 3303(b)(7) provides: "The capacity of Taiwan to sue and be

1

treated like any other foreign state. *See New York Chinese TV Programs v. U.E. Enter.*, 954 F.2d 847, 851 (2d Cir. 1992) (treaty between United States and Taiwan remains in effect despite de-recognition); *Liu v. Republic of China*, 892 F. 2d 1419, 1424-1434 (9th Cir. 1989) (Foreign Sovereign Immunities Act, 28 U.S.C. §§1330(a), 1602 *et seq.*, and Act of State doctrine apply to Taiwan despite de-recognition); *Millen Indus. v. Coordination Council*, 855 F.2d 879, 881-886 (D.C. Cir. 1988) (same). *See also Kao Hwa Shipping Co., S.A. v. China Steel Corp.*, 816 F. Supp. 910, 914 n.5 (S.D.N.Y. 1993) (FSIA applies to trade instrumentality of Taiwan despite de-recognition); *District of Columbia Citizens Ass'n v. Bd. of Zoning Adjustment*, 530 A.2d 1163 (D.C. App. 1987) (language in Taiwan Relations Act providing that U.S. laws would apply to Taiwan in same manner that they were applied when two countries enjoyed full diplomatic relations required Zoning Board to treat Taiwan's instrumentality's application as if it were for chancery use).

TECRO is Taiwan's representative office in the United States, and AIT is the United States' representative office in Taiwan, as set out in *Taiwan v. United States District Court*, 128 F.3d 712, 714 (9th Cir. 1997),

> When the United States established relations with the People's Republic of China in 1979, it severed diplomatic relations with Taiwan. However, in order to maintain a formal relationship with Taiwan, Congress enacted the Taiwan Relations Act, 22 U.S.C. §§ 3301-3316, to provide a structure for "the continuation of commercial, cultural, and other relations between the people of the United States and the people on Taiwan." See

---

sued in courts in the United States, in accordance with the laws of the United States, shall not be abrogated, infringed, modified, denied, or otherwise affected in any way by the absence of diplomatic relations or recognition."

[3]Section 3314 defines "laws of the United States" to include "any statute, rule, regulation, ordinance, order, or judicial rule of decision of the United States or any political subdivision thereof" and defines "Taiwan" to include the "successor governing authorities" to the governing authorities recognized prior to 1979 as the Republic of China.

22 U.S.C. §3301(a)(2) (1994). Under the TRA, those relations are to be conducted by a nonprofit corporation called the American Institute in Taiwan (AIT) on behalf of the United States, 22 U.S.C. § 3305(a), and by a counterpart "instrumentality" on behalf of the people on Taiwan. See 22 U.S.C. § 3309(a) (1994). That Taiwan counterpart instrumentality is TECRO, which was formerly known as the Coordination Council for North American Affairs (CCNAA). *See* Exec. Order No. 12,143, 44 Fed. Reg. 37,191 (1979) (recognizing CCNAA as the instrumentality with authority to act on behalf of Taiwan), and Exec. Order No. 13,014, 61 Fed. Reg. 42,963 (1996) (recognizing TECRO as CCNAA's successor). In essence, TECRO performs functions similar to the functions performed by embassies of countries with whom the United States maintains diplomatic relations.

Today, Taiwan is an important, democratic country with the 19th-largest economy in the world.[4]

## III.   Procedural Background

On July 5, 2012, Plaintiff Weiming Chen ("Plaintiff" or "Chen") filed a Complaint (Dkt. 1) against two named defendants, President Ma, and Chief Lee, as well as against unnamed John Does and Mary Roes. The Complaint refers to five exhibits, a project prospectus as Exhibit 1 (*id.*, ¶26), a contract in Chinese with a certified English translation as Exhibit 2 (*id.* ¶31), an email asking for "momentary suspension of the contract" as Exhibit 3 (*id.* ¶42), an email rescinding and canceling the contract as Exhibit 4 (*id.* ¶43), and some sort of communication by Plaintiff's previous lawyer as Exhibit 5 (*id.* ¶44). None of these exhibits were attached to the Complaint or filed on the electronic docket. However, Exhibits 1 and 2 (*see* Exs. 1 and 2 to Koplovitz Decl.) were served by private process server on the Taiwan Economic and Cultural Office ("TECO") in New York[5] as attachments to the Complaint as part of Plaintiff's efforts to serve President Ma and Chief Lee (which we discuss below).

---

[4] http://en.wikipedia.org/wiki/Taiwan.

[5] TECO-New York is a branch office of TECRO and is equivalent to a consulate.

The Complaint alleges four causes of action: Breach of Contract, Breach of Implied Contractual Duties, Malicious Interference of Business (Contractual) Relations, and Civil Conspiracy. (Dkt. 1, pp. 11-13). According to the Complaint's allegations as well as Exhibits 1 and 2, referenced therein, the Preparatory Committee of Democracy Statue (Foundation) ("Foundation") entered into a contract ("Contract") with "the government of Kinmen County, as an integral part of the government of the Republic of China in Taipei, Taiwan" on January 17, 2012. (Ex. 2, English translation, p.2). Chen signed on behalf of the Foundation, and Defendant Lee signed on behalf of Kinmen County. (*Id.*) (*See also* Dkt. 1 ¶¶5, 15, 31, 40). Chen alleges himself to be a "worldly famous sculpture artist" (*id.* ¶5) who was, per the terms of the Contract, tasked with the "designing, creation, and implementation" (Ex. 2, English translation, p.1) of a "32-meter high Bronze-Steel structured sculpture of the Statue of Democracy" while "the Bureau of Cultural Affairs, Kinmen County" would complete the "32-meter high base building in support of the Statue," all of which would be installed when completed on Kinmen Island. (Dkt. 1 ¶¶30, 32). According to the Contract, the Foundation would fund "70% to 75% of the budget" of the Statue, and Kinmen County would fund "25% to 30%"). (Ex. 2, English translation, p.2). "The budget for total allocation of funds is US$1,500,000." (*Id.*).

Thereafter, in January 2012, certain unnamed persons with the Bureau of Cultural Affairs of Kinmen County allegedly rescinded and cancelled the Contract, although Chen has "never received any formal and official correspondence" that the Contract was "officially cancelled." (Dkt. 1 ¶¶42-43). Chen alleges that President Ma is personally liable under a theory of *respondeat superior* for the alleged breach of contract by the Kinmen County Government, and

Defendant Lee is personally liable as the signatory of the Contract on behalf of Kinmen County. (*Id.* ¶47).[6]

The Complaint repeatedly alleges that President Ma and Chief Lee were acting in their official capacities, that is, as government officials of Kinmen County or Taiwan. (*See, e.g., id.* ¶¶ 9, 15, 19, 30, 31, 42, 43, 46, 47, 51). There is no allegation in the Complaint that either President Ma or Chief Lee acted in their personal capacities, yet they are sued in their personal capacities. Indeed, Plaintiff does not name Taiwan or Kinmen County as defendants but instead seeks injunctive relief as well joint and several compensatory and punitive damages from President Ma and Chief Lee as individuals in the total amount of $24.49 million. (*Id.* at pp. 13-14 "Prayer for Relief").[7] *See Kentucky v. Graham*, 473 U.S. 159, 164-168 (1985) (discussing the difference between official and personal capacity suits).

According to the docket, on October 4 and 5, 2012, the Clerk of this Court mailed separate copies of the summons and complaint, in English and Chinese, to President Ma and Chief Lee by registered mail, return receipt requested, pursuant to Federal Rule of Civil Procedure 4(f)(2)(c)(ii). (Dkts. 2, 3). It is not clear from the electronic docket whether the exhibits to the complaint were included.

---

[6]Here we refer to the first ¶47 on page 10 of the Complaint, not the second ¶47 following ¶51.

[7]Chen seeks $1.5 million in compensatory damages for breach of contract for the "total contract value" (Dkt. 1 "Prayer for Relief" at p.13) even though, per the terms of the Contract, Kinmen County agreed only to "be responsible for total budget's funds by 25% to 30%" of the total budget of $1.5 million. (Ex. 2, English translation, p.2). Chen also seeks $990,000 in compensatory damages for the "Breach of Implied Contract" and $22 million in punitive damages. (Dkt. 1 at pp. 13-14).

On October 25, 2012, TECRO in Washington, D.C., sent a request to AIT, asking that the United States "submit a Statement of Interest informing the court that both President Ma and Bureau Chief Lee have foreign official immunity in this case." (*See* Ex. 3 to Koplovitz Decl.).

On October 26, 2012, Chen filed with the Court a letter asking for an extension of time to complete service until December 4, 2012. (Dkt. 4). The letter makes the following representation about service:

> The deadline for Plaintiff to complete and perfect service upon defendants is November 4, 2012. On October 4, 2012, this undersigned caused the pleading papers served upon both the defendants by certified international mail via Clerk's Office. On the same date, the service upon the defendants were also made by process server, by hand delivery in person to Taiwan Economic and Cultural Office (TECO). This morning, this undersigned received a phone call from Mr. Kyle from the Clerk's Office, informing him that these services were rejected because the Defendants emphasized that the Republic of China is a member state to Hague Convention, Service needs to be made strictly following Hague Convention procedures. With this sort of change of circumstances, the remaining time may not be sufficient to allow Plaintiff to accomplish his service following complicated Hague procedures. Therefore, this undersigned respectfully prays that this Honorable Court kindly permit a month enlargement of time allowing the Plaintiff to perfect the service during such a prolonged time period.

That is, according to Plaintiff, service up to that point had been rejected by the Clerk. The Court granted the motion, but informed Plaintiff that no further extensions would be granted. (Dkt. 4).

Although no further attempts at service were noted on the docket, on December 12, 2012, Plaintiff filed a Motion for Entry of Default and supporting documents (Dkts. 5, 6, 7), which were re-filed on December 13 (Dkts. 9, 10). In that motion, Plaintiff contended that proper service had been made by certified mail to Taiwan "via Clerk's Office on October 4, 2012" and by hand delivery to TECO-New York on October 4. (Dkt. 9 at ¶¶C, D, E; *see also* Dkt. 10 ¶¶C, D, E). Plaintiff's counsel also swore upon penalty of perjury that "Report in compliance regarding Service of Process of Summons and Complaint was filed and docketed with this

6

Honorable Court on November 30, 2012." (Dkt. 10 at ¶K); (*see also* Dkt. 9 at ¶K). No docket entry exists, however, for November 30, 2012. Plaintiff also claimed to attach as Exhibits 1 and 2 "Proof of Service" on TECO-New York by process server Yan Zhao, but no such Proofs of Service were attached or appear in the docket. Finally and most importantly, these representations regarding service are inconsistent with the representations of Plaintiff's counsel in his October 26 letter (Dkt. 4), quoted above, in which an extension of time to serve process was requested because "Mr. Kyle from the Clerk's Office" had informed Chen's counsel that previous service was improper. (*Id.*).

On December 13, 2012, the Clerk of the Court, nevertheless, issued a Certificate of Default as to President Ma and Chief Lee, apparently signing the proposed Certificate filed by Plaintiff. (Dkt. 8). The Clerk's Certificate refers to a November 30, 2012 proof of service which, as just mentioned, nowhere appears in the docket.

The day after the Clerk entered default, December 14, 2012, an AIT representative informed TECRO that no decision had been made on TECRO's request for a Statement of Interest "and that the U.S. Government practice has generally been not to make a decision whether to intervene in this kind of litigation before other avenues to seek dismissal of the case have been pursued." (*See* Ex. 4 to Koplovitz Decl.).

On December 19 – a mere six days after the Clerk entered default – counsel for President Ma and Chief Lee, Peter Livingston and Deborah Koplowitz, Esqs., entered their appearances, and filed a letter requesting a pre-motion conference to vacate the Clerk's notation of default for good cause and for adjournment of the return date on Plaintiffs' motion for default until January 25. (Dkts. 11, 12, and 14). The Court granted Defendants' request. (Dkt. 14).

7

On December 19, 2012, Plaintiff filed a motion for entry of default judgment (Dkt. 13), which was re-filed on December 21, 2012 (*see* Dkts. 15, 16, 18).  By letter, dated December 27, 2012, the Court informed Plaintiff that the opposition to the motion for a default judgment was due on January 25, 2013, and that any reply was due on February 8.

For all the reasons set forth below, this Court should set aside the default entered on December 13, 2012, and the Complaint should be dismissed.

**III.    Argument**

**A.    The Default Should Be Set Aside Pursuant to Rule 55(c) for Good Cause**

**1.    Standards For Setting Aside a Default Under Rule 55(c)**

Under Federal Rule of Civil Procedure 55(c), once the Clerk of the Court enters default, the defendant may move to set it aside for "good cause." The Second Circuit construes the phrase "good cause" "generously."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). *See also Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (*per curiam*) (Rule 55(c) standard is "lenient"). This is so "because defaults are generally disfavored and are reserved for rare occasions[.]" *Enron*, 10 F.3d at 96. Hence, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* Defaults are especially disfavored where "substantial rights are implicated or when substantial sums of money are demanded." *Id.* at 97.

The Second Circuit has established three factors to consider when determining whether to set aside a default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* Courts also may consider equitable factors, such as "whether the entry of default would bring about a

8

harsh or unfair result." *Id.* at 96. Courts apply these factors more liberally in the context of vacating a default as opposed to a default judgment. *Id.*

Under certain circumstances, if a particularly "compelling" defense is presented, it may outweigh even a willful default. In *Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56 (2d Cir. 1990) (*per curiam*), the Second Circuit affirmed vacatur of a default judgment, in the more stringent Rule 60(b) context, even though the default "may be justly characterized as willful" because defendant presented a "compelling reason" to vacate the judgment. *Id.* at 57. The court held that allowing the "default judgment to stand" in the face of the compelling defense "would[] have constituted a serious miscarriage of justice." *Id.* at 58. *See also Tecnart Industria e Comercio Ltda. v. NOVA Fasteners Co.*, 107 F.R.D. 283, 285 (E.D.N.Y. 1985) (noting defendant's "lamentable conduct in ignoring service of process" but noting that "the Draconian remedy of a default judgment. . .cannot be employed" in light of meritorious defense).

As explained below, all three *Enron* factors are satisfied and, because we present particularly compelling defenses, anything less than a setting aside of the default and dismissal of all claims against President Ma and Chief Lee would constitute a serious miscarriage of justice.

We begin by discussing the last *Enron* factor, whether Defendants have presented meritorious defenses.

### 2.      President Ma and Chief Lee Are Presenting Meritorious Defenses

President Ma and Chief Lee present five meritorious defenses, all of which should be considered by this Court on their merits and the first two of which are particularly important and compelling. First, President Ma and Chief Lee are immune from the jurisdiction of this Court under the common law doctrines of head-of-state and foreign official immunity. Second,

President Ma's head-of-state immunity renders him immune from service of process. Third, Chen has not presented adequate evidence that either President Ma or Chief Lee were validly served with process. Fourth, Plaintiff lacks standing to sue. And fifth, Defendants are not parties to the contract at issue.

a.     **President Ma and Chief Lee Are Immune from the Jurisdiction of this Court**

In *Samantar v. Yousuf*, 130 S. Ct. 2278 (2010), the U.S. Supreme Court held that the Foreign Sovereign Immunities Act, 28 U.S.C. §§1330(a), 1602 *et seq.* ("FSIA"), does not govern claims to immunity by officials of foreign states. (*Contra* Dkt. 15 at ¶5, asserting that Defendants are not immune pursuant to the FSIA, 28 U.S.C. §§1605 and 1605A). Accordingly, an individual sued in his personal capacity "for conduct undertaken in his official capacity" is not considered a "'foreign state within the meaning of the" FSIA. *Samantar*, 130 S. Ct. at 2286. *See also id.* at 2286-2289. Rather, common law immunity governs the determination whether a foreign official is immune from suit in a U.S. court. *Id.* at 2292 ("we think this case, in which respondents have sued petitioner in his personal capacity and seek damages from his own pockets, is properly governed by the common law").

In this case, two forms of common law immunity – head-of-state immunity and foreign official immunity – apply. Because immunity implicates substantial rights, the default against President Ma and Chief Lee constitutes a serious miscarriage of justice and should be rectified with a setting aside of the default and a dismissal of the Complaint against them. *See First Fidelity Bank, N.A. v. The Gov't of Antigua and Barbuda*, 877 F.2d 189, 196 (2d Cir. 1989) ("default judgments are disfavored, especially those against foreign sovereigns. Courts go to great lengths to avoid default judgments against foreign sovereigns or to permit those judgments to be set aside."). Indeed, President Ma and Chief Lee's immunities are so compelling and

10

important that they warrant the setting aside of the default and dismissal regardless of the other *Enron* factors. *See Wagstaff-El*, 913 F.2d at 57 (vacating default judgment for "compelling reason" even where default was willful); *Tecnart Industria*, 107 F.R.D. at 285.

### i.      President Ma Is Immune As a Current Head of State

Under the first form of common law immunity, a sitting head of state is "absolutely immune from personal jurisdiction in United States courts unless that immunity has been waived by statute or by the foreign government recognized by the United States." *Yousuf v. Samantar*, 699 F.3d 763, 769 (4th Cir. 2012) (internal quotation and citation omitted); *Devi v. Rajapaksa*, 2012 U.S. Dist. LEXIS 127825, *6 (S.D.N.Y. Sept. 4, 2012) (same). *See also Gomes v. ANGOP*, 2012 U.S. Dist. LEXIS 119049, at *21-23 (E.D.N.Y. Aug. 22, 2012) (finding President of Angola to be immune as head of state); *Smith v. Ghana Com. Bank*, 2012 U.S. Dist. LEXIS 99735, at *25-26 (D. Minn. June 18, 2012) (finding President of Ghana to be immune as head of state); *Lafontant v. Aristide*, 844 F. Supp. 128, 131-32 (E.D.N.Y. 1994) (finding President of Haiti to be immune as head of state).

Although courts generally will rely on the determination of the Executive Branch to determine head-of-state immunity, *see, e.g., Devi*, 2012 U.S. Dist. LEXIS 127825, *6-7, this Court has the authority to determine "for itself whether all the requisites" for immunity exist even in the absence of any Executive Branch submission. *Samantar*, 130 S. Ct. at 2284 (internal quotation and citation omitted). *See also In re Doe,* 860 F.2d 40, 45 (2d Cir. 1988) ("When lacking guidance from the executive branch, as here, a court is left to decide for itself whether a head-of-state is or is not entitled to immunity."); *Heaney v. Gov't of Spain*, 445 F.2d 501, 503 n.2 and 504-05 (2d Cir. 1971) (noting that the State Department had not submitted its view and finding Spanish Government official immune on court's own analysis); *Smith*, 2012 U.S. Dist.

11

LEXIS 99735, at *25-26 (finding President of Ghana to be immune as head of state even though Executive Branch filed no suggestion of immunity).

In this case, although the Executive Branch has not (yet) submitted a suggestion of immunity, this Court should find President Ma to be immune as a sitting head of state. There is no dispute that President Ma is the current President of Taiwan, for Chen so alleges. (*See* Dkt. 1, ¶¶8 alleging that President Ma is "President" of Taiwan). *See also* Web site of the Office of the President of the Republic of China (Taiwan).[8] And, there is no allegation or evidence that his immunity has been waived by statute or by Taiwan. Accordingly, President Ma is absolutely immune from personal jurisdiction in this Court. (*Contra* Dkt. 18 at 4 ¶J, arguing conclusorily that head-of-state immunity "defense" is "invalid").[9]  For the reasons given above, pp. 2-3, Chen's argument that President Ma should not be recognized as a sitting head of a foreign state because the United States does not officially recognize Taiwan as a sovereign (Dkt. 18 at 4 ¶K) should be rejected.

Default never should have been entered against President Ma, because this Court lacked personal jurisdiction over him. Accordingly, this suit against him should be dismissed. *See Swarna v. Al-Awadi*, 622 F.3d 123, 141 (2d Cir. 2010) (noting that if diplomats were immune "the District Court would have lacked jurisdiction to enter a default, much less a default judgment"); *Gomes*, 2012 U.S. Dist. LEXIS 119049, at *19-20 ("A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction").

---

[8]http://english.president.gov.tw/Default.aspx?tabid=454

[9]Because, as *Samantar* held, the FSIA does not govern the immunity determination of officials of foreign states, the FSIA's "commercial activity" exception, 28 U.S.C. §1605(a)(2), has no application here. (*Contra* Dkt. 18 at 5 ¶L).

We note too that permitting this lawsuit to proceed against a sitting head of state who is absolutely immune from the jurisdiction of this Court in this case would greatly impact foreign relations with Taiwan. Those relations are already delicate and should not further be aggravated by subjecting President Ma to a U.S. lawsuit.

### ii. Chief Lee and President Ma Are Immune Under the Doctrine of Foreign Official Immunity

Both Defendants are immune under the second form of immunity, foreign official immunity. Under the common law doctrine of foreign official immunity, an individual is immune from the jurisdiction of U.S. courts for acts he performed in his official capacity, regardless of whether the foreign official is currently in office. *See Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009); *Yousuf*, 699 F.3d at 769 and 774.

In this case, again, although the Executive Branch has not (yet) submitted a suggestion of immunity, this Court should find both Defendants to be immune as foreign officials. There is no dispute that President Ma and Chief Lee were, at all relevant times, acting in their official capacity as representatives of Taiwan and Kinmen County, for Chen so alleges. (*See, e.g.,* Dkt. 1 ¶¶ 9, 15, 19, 30, 31, 42, 43, 46, 47, 51). President Ma and Chief Lee are therefore immune from the jurisdiction of this Court for this lawsuit under the doctrine of foreign official immunity. Accordingly, default never should have been entered against them, and this suit against them should be dismissed for lack of personal jurisdiction. *See Swarna*, 622 F.3d at 141; *Gomes*, 2012 U.S. Dist. LEXIS 119049, at *19-20.

Again, we note the delicate foreign relations concerns that would be implicated by permitting this lawsuit to go forward against immune foreign officials.

### b.     President Ma's Head of State Immunity Renders Him Inviolable and Hence Immune from Service of Process

Because heads of state are immune, they are also inviolable. Accordingly, President Ma is immune from service of process, and to the extent he was served, such service is a nullity.

In *Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004), the Seventh Circuit considered whether the then President of China, President Jiang, could be served with process aimed at the "Falun Gong Control Office" known as "Office 6/10." *Id.* at 622, 627. The court held that recognizing President Jiang's immunity as a head of state precluded service of process on him, including process aimed at a third party. *Id.* at 628 (relying in part on *Hellenic Lines Ltd. v. Moore*, 345 F.2d 978 (D.C. Cir. 1965), which found an ambassador to be immune from service of process under the doctrine of diplomatic immunity). The court held, "[r]ecognizing the immunity of a head of state and precluding service of process on a head of state are motivated by the same concern for the effective conduct of this nation's foreign affairs." *Id.*[10]

So here. President Ma's head-of-state immunity precludes service of process on him.

We note that the Second Circuit has not directly addressed this precise issue. *See Tachiona v. Mugabe*, 386 F.3d 205, 221 (2d Cir. 2004) ("Nor do we have any occasion to decide whether head-of-state immunity protected Mugabe and Mudenge from service of process"). However, in *Tachiona*, the Second Circuit found that temporary U.N. representatives, Robert Mugabe and Stan Mudenge, were entitled to the "full range of immunity from legal process afforded by Article 31 of the Vienna Convention" of Diplomatic Relations and the U.N.

---

[10]In *Ye*, the Seventh Circuit deferred to the Executive Branch's suggestion of immunity, which suggestion included immunity from service of process. 383 F.3d at 628. In this case, as mentioned, the Executive Branch has not yet filed a suggestion of immunity, hence this Court should undertake the immunity analysis on its own. *See Samantar*, 130 S. Ct. at 2284; *In re Doe*, 860 F.2d at 45; *Heaney*, 445 F.2d at 503 n.2 and 504-05; *Smith*, 2012 U.S. Dist. LEXIS 99735, at *25-26.

Convention on Privileges and Immunities. *Id.* at 219. Their diplomatic immunity rendered them inviolable and hence also immune from service of process. *Id.* at 221-224 (also relying in part on *Hellenic Lines*). The court held, "as a practical matter, service of process on a person entitled to diplomatic immunity both interferes with that person's representative functions and constitutes an affront to his or her dignity. In light of this court's own admonition that the inviolability principle be construed broadly, we hold that" Mugabe and Mudenge were immune from service of process. *Id.* at 224.

Further, in *Lafontant*, the U.S. District Court for the Eastern District of New York not only dismissed the action against the President of Haiti based on head-of-state immunity, but also quashed service. 844 F. Supp. at 130. *See also Sabbithi v. Al Saleh*, 605 F. Supp. 2d 122, 130 (D.D.C. 2009) (granting motion to quash service and dismiss case based on diplomatic immunity).

Certainly if diplomats are inviolable and hence immune from service of process, it makes logical and political sense for heads of state also to be inviolable and immune from such an affront to their dignity. *See Lafontant*, 844 F. Supp. at 132 (likening head-of-state immunity to diplomatic immunity). We urge this Court therefore to follow *Ye* and *Lafontant* and find President Ma to be inviolable and immune from service of process so as not to interfere with his presidential functions and so as not to cause an affront to his dignity.

President Ma's inviolability is sufficiently compelling and important so as to warrant the setting aside of the default and dismissal of the Complaint against him.

c.   **Chen Has Not Presented Adequate Evidence that President Ma and Chief Lee Were Properly Served with Process**

Plaintiff has not proven that President Ma and Chief Lee were properly served with the summons and complaint, including all the exhibits referenced therein, and accordingly the default should be set aside and the Complaint against them dismissed. *See Sartor v. Toussaint*, 70 Fed. Appx. 11, 13 (2d Cir. 2002) (relying on *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988), to hold that "[a] judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected."); *id.* (actual notice of suit does not cure failure to comply with the statutory requirements for serving process). *See also OS Recovery, Inc. v. One Group Int'l*, 234 F.R.D. 59, 60-61 (S.D.N.Y. 2005) (failure to serve summons violates Fed. R. Civ. P. 4(c)(1) and renders service of process defective).

Because President Ma and Chief Lee are individuals in a foreign country, they must be served pursuant to Rule 4(f).[11] *See Angellino v. Royal Family Al-Saud*, 681 F.3d 463, 468 (D.C. Cir. 2012) (finding that plaintiff was required to serve process on the Kingdom of Saudi Arabia under FSIA §1608(a) and on the Royal Family members sued in their personal capacities pursuant to Rule 4(f)); *Bogle-Assegai v. Conn.*, 470 F.3d 498, 507-08 (2d Cir. 2006) (finding, under Connecticut law, that plaintiff could not serve State employee, sued in his individual capacity, by making service through the State Attorney General's office). *See also* Fed. R. Civ. P. 4(i)(3) (party who sues U.S. officer or employee in individual capacity "must serve the United

---

[11]Defendants previously referred to Rule 4(j) as an "example" of a means to effectuate service against Defendants. (Dkt. 14). Having now fully investigated the issue, our position is that Rule 4(j) is not a proper means through which to serve President Ma and Chief Lee, sued in their personal capacities. In fact, neither Rule 4(j) (service on a foreign, state, or local government) nor the FSIA (service on a foreign sovereign) apply because Plaintiff has not named as defendants Taiwan or Kinmen County. (*Contra* Dkt. 17 at ¶B-H, arguing that Plaintiff effectuated service pursuant to Rule 4(j) and the FSIA).

States and also serve the officer or employee under Rule 4(e), (f), or (g)."). Accordingly, Plaintiff's efforts to serve Defendants through service upon TECO-New York failed to effectuate valid service upon President Ma and Chief Lee, who were sued in their personal capacities. (*Contra* Dkt. 17 at ¶G, arguing that service upon TECO-New York as "Defendants' place of principal business operations" was valid "supplemental" service).

Plaintiff has not shown that service was effectuated pursuant to Rule 4(f), including pursuant to Rule 4(f)(2)(c)(ii), as asserted. Rule 4(f)(2)(c)(ii) provides that, if there is no internationally agreed means of service, service may be effectuated outside the United States "by. . .any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." Fed. R. Civ. P. 4(f)(2)(c)(ii). Service under this Rule "must include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court." Fed. R. Civ. P. 4(l). Thus, even if there is evidence that the proper documents were mailed, if receipts signed by Defendants are not returned, service under this Rule is not effective. *See Ex-Im Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.,* 2005 U.S. Dist. LEXIS 8902, *5-6 (S.D.N.Y. May 11, 2005); *see also Marine Trading v. Naviera Com. Naylamp, S.A.*, 879 F. Supp. 389, 392 (S.D.N.Y. 1995).

According to the electronic docket in this case, the Clerk of this Court mailed separate copies of the summons and complaint,[12] in English and Chinese, to President Ma and Chief Lee by registered mail, return receipt requested on October 4 and 5, 2012. (Dkts. 2, 3). Thereafter, Plaintiff's counsel swore upon penalty of perjury that he had "filed and docketed" a "Report in compliance regarding Service of Process of Summons and Complaint" on November 30, 2012.

---

[12] It is not clear from the docket whether the summons was in fact included in the mailing. It is also not clear from the docket whether the exhibits to the complaint were included in the mailing. The Complaint served on TECO-New York did not include Exhibits 3, 4, or 5.

17

(Dkt. 10 at ¶K); (*see also* Dkt. 9 at ¶K). The Clerk also relied on a supposed November 30 proof of service in its Certificate of Default entered on December 13, 2012 (Dkt. 8). We, however, have found no such docket entry. In fact, no return receipts appear in the record. Accordingly, service under Rule 4(f)(2)(c)(ii) was not effective.

### d.    Lack of Standing

To the extent the Foundation, and not Chen, is the party in fact to the Contract, the Foundation as the actual obligee, this action brought by Chen should also be dismissed for lack of standing. A non-party to a contract lacks standing to enforce the contract absent clear terms evincing an intent to permit enforcement of the agreement by the third party in question. *See Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009). In this case, the Contract – which is attached to the Complaint and incorporated by reference – contains no terms suggesting any intent to permit enforcement of the agreement by Chen himself. In relevant part, the Contract states that "This sculpture shall be entrusted and commissioned by the Preparatory Committee of Democracy Statue (Foundation) formed in the United States, to sculpture artist Weiming Chen for designing, creation, and implementation." By the terms of the Contract, then, Chen is tasked only with "designing, creation, and implementation" of the Statue but has no contractual rights to enforce the agreement against Kinmen County.

### e.    Lack of Privity and Failure to Sue the Real Party in Interest

The Complaint against President Ma and Chief Lee also should be dismissed for lack of privity and failure to sue to the real party in interest pursuant to Federal Rule of Civil Procedure 19(a).

Plaintiff's alleges a breach of the Contract under "the State law of New York." (Dkt. 1 ¶47).[13] For more than a hundred years, New York law has provided that, in breach of contract actions, in law and equity, "privity between a plaintiff and a defendant is necessary to the maintenance of an action on the contract." *Seaver v. Ransom*, 224 N.Y. 233, 237 (1918). *See also Suffolk County v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d Cir. 1984) ("absent a contractual relationship there can be no contractual remedy"). The allegations of the Complaint demonstrate that the Foundation and Kinmen County are the actual parties to the Contract, and not Plaintiff and President Ma or Chief Lee. Accordingly, this breach of contract suit against President Ma and Chief Lee must be dismissed for lack of privity between the parties.

Moreover, because Kinmen County is the party to the Contract, it is the real party in interest, *see Samantar,* 130 S. Ct. at 2292, and the Complaint against President Ma and Chief Lee as non-parties must be dismissed. *See* Fed. R. Civ. P. 19(a); *Pan Am. World Airways, Inc. v. Vetements, Inc.,* 2010 U.S. Dist. LEXIS 97713, *10 (S.D.N.Y. Sept. 17, 2010) (party to the contract at issue is a necessary party under Rule 19(a)(1)); *Errico v. Stryker Corp.,* 2010 U.S. Dist. LEXIS 133567, *8 (S.D.N.Y. Dec. 14, 2010) (same).

### f.    Plaintiff Fails to State a Claim Upon Which Relief May Be Granted

None of the four counts state a claim upon which relief may be granted.

First, Plaintiff does not allege an actionable breach of contract under New York law. Plaintiff alleges only that he received unofficial and "unverifiable correspondence" (Dkt. 1 ¶44) from various Kinmen County personnel that the Contract was rescinded. He therefore does not

---

[13]Here we refer to the second ¶47 on page 11 of the Complaint.

allege an actual breach. *See First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 168 (2d Cir. 1998) (elements of breach of contract include breach by one of the parties to the contract). Nor does he allege any breach by President Ma or Chief Lee, who are not parties to the Contract. *Id.* Nor does he allege President Ma or Chief Lee caused any breach. *See Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52-53 (2d Cir. 2011) (causation is essential element of breach of contract action). Nor does he allege that he is a party to the Contract.

Second, Plaintiff cannot state a claim for relief based upon an implied contract. "A contract cannot be implied in fact where there is an express contract covering the subject matter involved." *Julien J. Studley, Inc. v. N.Y. News,* 70 N.Y.2d 628, 629 (1987).

Third, Plaintiff fails to allege a claim for tortious interference with business relations. The requirements of such a claim are: 1) the existence of a valid contract between Plaintiff and a third party, 2) the defendant's knowledge of that contract, 3) defendant's intentional and improper procuring of a breach, and 4) damages. *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007). Here, Plaintiff fails to allege the existence of a contract between himself and any third party, for the Foundation and not he is the party to the Contract. Plaintiff also has not alleged with any factual content that President Ma had any knowledge of the Contract at issue. Also, neither intentional procurement of a breach is alleged, nor damages caused by President Ma and Chief Lee.

Finally, Plaintiff fails to allege a claim for civil conspiracy, because no such action exists under New York law. *See Dune Deck Owners Corp. v. Liggett,* 85 A.D.3d 1093, 1096 (2d Dept. 2011).

20

### 3.   Default Was Not Willful

As argued *supra*, President Ma and Chief Lee were not properly served with process. Accordingly, no responsive pleading was due, and default was not willful. *See Sibley v. Jamestown Bd. of Pub. Util.*, 2012 U.S. Dist. LEXIS 97712, at *12-13 (W.D.N.Y. July 13, 2012) (finding that "Ample good cause exists to grant Defendants' request and set aside the Clerk's entries of default." Because Defendants were never properly served "Defendants' failure to timely answer the summons and complaint was clearly not willful since no responsive pleading was due.").

Even if they have properly been served and/or even if they are not immune, they had a basis for a good faith belief to the contrary. *See Sartor*, 70 Fed. Appx. at 13-14 (vacating default judgment that district court had entered in part because it disbelieved defendant's claim that he did not receive process and remanding for district court to consider whether service was effectuated). In determining whether a defendant's default was willful, courts require "something more than mere negligence, such as egregious or deliberate conduct." *Swarna v. Al-Awadi*, 622 F.3d 123,142 (2d Cir. 2010) (internal citations and quotations omitted). A default is not willful, therefore, for mistakes made in good faith. *Id.* Two points are relevant here. First, there are good grounds for President Ma and Chief Lee to think that they are absolutely immune from this lawsuit. Second, as pointed out above, Plaintiff represented to this Court in asking for an extension of time that the Clerk of the Court had rejected the service it later relied upon in seeking a default.

This case therefore resembles *Swarna*. In that case, defendants Al-Awadi and Al-Shaitan, a diplomat and his wife, mistakenly believed they "need not answer the complaint" because a prior lawsuit against them had been dismissed on grounds of diplomatic immunity "without

21

defendants needing to appear." 622 F.3d at 142. They believed that the second suit also would be dismissed without appearance. *Id.* at 143. They operated therefore on "mistaken belief," not egregious, deliberate conduct. *Id.*

Also, as in *Swarna*, President Ma and Chief Lee acted swiftly upon receiving the Plaintiff's motion for default judgment. They appeared a mere six days following entry of default, and immediately brought to this Court's attention the important immunity principles at issue. *Id.*

Further, we note that, even if President Ma and Chief Lee's conduct is found to be egregious and/or deliberate (it should not be), their important immunity defenses should outweigh any finding of willfulness and permit vacatur of the default in any event. *See Wagstaff-El*, 913 F.2d at 57; *Tecnart Industria*, 107 F.R.D. at 285. Indeed, because President Ma and Chief Lee are immune from the personal jurisdiction of this Court and President Ma is also immune from service of process, this Court lacked jurisdiction to enter a default against them, *see Swarna*, 622 F.3d at 141, and anything less than a full dismissal of the claims against them would constitute a serious miscarriage of justice and violation of their immunities.

**4.    Setting Aside the Default Will Not Prejudice the Plaintiff**

To prevail on the prejudice prong of the Rule 55(c) analysis, a plaintiff must show more than just delay. *Swarna,* 622 F.3d at 143. He must show that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion. *Id.*; *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).

Plaintiff can show no prejudice here. He filed suit in July 2012, complaining of acts that allegedly took place in January 2012. It is now only one year after the complained of events. The process upon which Plaintiff relies was last October. It is unlikely that any evidence will be

lost, given the recency of the complained of events and of the lawsuit as a result of Defendants'

short delay in appearance.  For the same reasons, he also cannot show that delay will increase

difficulties in discovery. And, the short delay will not provide any greater opportunity for fraud

or collusion.

## IV.    Conclusion

For all the foregoing reasons, President Ma and Chief Lee respectfully ask this Court to

set aside the default and dismiss the Complaint against them.

DATED:        January 25, 2013

ROSEN, LIVINGSTON & CHOLST LLP

By __/s/Deborah B. Koplovitz_____
        Deborah B. Koplovitz, Esq.
        Peter I. Livingston, Esq.
275 Madison Avenue, Suite 500
New York, New York 10016
pil@rosenlivingston.com
dk@rosenlivingston.com
Tel.    (212) 687-7770
Fax     (212) 687-8030
*Attorneys for Defendants*

On the Brief, counsel to be admitted *pro hac vice*
BERLINER, CORCORAN & ROWE, L.L.P.
Thomas G. Corcoran, Jr., Esq.
Laina Lopez, Esq.
1101 Seventeenth Street, N.W., Suite 1100
Washington, D.C. 20036
tgc@bcr-dc.com
lcl@bcr-dc.com
Tel.    (202) 293-5555
Fax     (202) 293-9035