```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
WEIMING CHEN,

                        Plaintiff,

        - against -                              MEMORANDUM AND ORDER

YING-JEOU MA, President of the Republic          12 Civ. 5232 (NRB)
of China, Taiwan (ROC); HSI-LUNG LEE,
Chief of the Bureau of Civil Affairs,
Government of Kinmen County; and JOHN
DOES and MARY ROES,

                        Defendants.
----------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Weiming Chen ("plaintiff") filed this breach of contract action against the current President of the Republic of China (Taiwan), Ying-jeou Ma ("President Ma"), and the Chief of the Bureau of Civil Affairs of the Government of Kinmen County, Hsi-Lung Lee ("Chief Lee" and, together with President Ma, "defendants").  In the motions before the Court, plaintiff seeks entry of a default judgment against defendants, and defendants seek to (1) set aside the Clerk's certificate of default and (2) dismiss plaintiff's complaint on the basis of, <u>inter</u> <u>alia</u>, defendants' immunity from this Court's jurisdiction.[1]  For the reasons set forth below, we deny

---

[1] Although plaintiff requested oral argument on these motions, we find that oral argument is unnecessary in light of the purely legal nature of the dispute.

plaintiff's motions and grant defendants' motion, thereby dismissing plaintiff's complaint.

## BACKGROUND[2]

### I. Factual Allegations

On January 17, 2012, the Preparatory Committee of Democracy Statue (Foundation) (the "Foundation") entered into a contract with the Government of Kinmen County ("Kinmen County"), with plaintiff signing on behalf of the Foundation, and Chief Lee signing for Kinmen County. (Compl. ¶ 31; Koplovitz Decl. Ex. 2, at 3.[3]) Under the terms of the agreement, plaintiff -- who professes to be a "worldly famous sculpture artist" (Compl. ¶ 5) -- undertook to design and build a 32-meter "Statue of Democracy" (id. ¶ 32). In exchange, Kinmen County agreed to fund 25 to 30 percent of the project (Koplovitz Decl. Ex. 2, at 3) and to construct a 32-meter base building on the shores of Kinmen Island (id.; Compl. ¶¶ 5, 32).

According to plaintiff, the day after the contract was executed, unnamed employees of the Bureau of Cultural Affairs of Kinmen County "informally issued" plaintiff an email requesting the "momentary suspension" of the agreement. (Compl. ¶ 42.) Plaintiff alleges that, approximately two weeks

---

[2] This background is derived from the complaint ("Compl."), filed July 5, 2012, and the Declaration of Deborah B. Koplovitz ("Koplovitz Decl."), filed January 25, 2013, and the exhibits annexed thereto.

[3] When citing to specific pages of the exhibits annexed to the Koplovitz Declaration, we refer to the page numbers provided in the ECF header.

2

later, the unnamed employees sent a second email that "rescinded and cancelled" the contract. (Id. ¶ 43.) Despite these communications, plaintiff maintains that he "never received any formal and official correspondence" from Kinmen County that "clearly and unequivocally" rescinded the agreement. (Id.) Accordingly, plaintiff continued to perform under the contract until April 27, 2012. (Id. ¶ 44.) Meanwhile, plaintiff allegedly sent letters of inquiry to President Ma and other "Kinmen-Taiwan authorities" but received no response. (Id.)

Based on the foregoing, plaintiff asserts claims against defendants for breach of contract, breach of implied contractual duties, malicious interference with business (contractual) relations, and civil conspiracy. (Id. ¶¶ 52-54.) Although plaintiff predicates this action on acts defendants purportedly took in their official capacities (see, e.g., id. ¶¶ 30-31, 42-43, 46-47, 51), plaintiff sues defendants in their personal capacities (see id. at "Prayer for Relief" (seeking to hold defendants jointly and severally liable for compensatory and punitive damages); Dkt. No. 43, at 7 (affirming that plaintiff "seeks damages from the pockets of President Ma and Chief Lee as individuals")). According to plaintiff, Chief Lee is personally liable to plaintiff as the signatory of the agreement, and President Ma is personally liable for the

3

alleged breach under a theory of respondeat superior. (Compl. ¶ 47.)

## II. Procedural History

On October 4, 2012, the Clerk of Court mailed copies of the summons and complaint to defendants by registered mail, return receipt requested, pursuant Rule 4(f)(2)(c)(ii) of the Federal Rules of Civil Procedure. (Dkt. Nos. 2-3.) That same day, plaintiff allegedly delivered copies of the summons and complaint to the Taipei Economic and Cultural Office in New York ("TECO-New York").[4] (Dkt. No. 4.) On October 25, 2012, the Taipei Economic and Cultural Representative Office in Washington, DC ("TECRO") sent a letter to the American Institute in Taiwan ("AIT"), requesting that the United States "submit a Statement of Interest informing" this Court that President Ma and Chief Lee "have foreign official immunity." (Koplovitz Decl. Ex. 3, at 3.) In the meantime, however, defendants did not respond to plaintiff's complaint or otherwise appear in this action.

On December 13, 2012, the Clerk of Court entered a certificate of default against defendants (Dkt. No. 8), and plaintiff moved for default judgment (Dkt. No. 9).[5] The following day, an AIT representative notified TECRO via email

---

[4] Plaintiff has not filed proof of service on TECO-New York.
[5] Plaintiff filed a second motion for entry of default judgment on December 21, 2012. (Dkt. No. 15.)

4

that the United States generally does not decide "whether to intervene in this kind of litigation before other avenues to seek dismissal of the case have been pursued." (Koplovitz Decl. Ex. 4.) On December 19, 2012, defendants filed notices of appearance in this action. (Dkt. Nos. 11-12.) Defendants now move to (1) set aside the Clerk's entry of default for "good cause" pursuant to Rule 55(c) of the Federal Rules of Civil Procedure ("Rule 55(c)") and (2) dismiss plaintiff's complaint under Rules 12(b)(2), 12(b)(5), 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure. (Dkt. No. 20.)

## DISCUSSION

A "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In determining whether "good cause" exists, "a district court must consider three factors: (1) whether the default was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious defense is presented." Swarna v. Al-Awadi, 622 F.3d 123, 142 (2d Cir. 2010). "Because there is a preference for resolving disputes on the merits, doubts should be resolved in favor of the defaulting party." Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001) (internal quotation marks omitted); see also Enron Oil Corp. v. Diakuhara, 10 F.3d

5

90, 96 (2d Cir. 1993) (stating that defaults are "generally disfavored" and "reserved for rare occasions").

In this case, defendants have offered a meritorious defense that not only establishes "good cause" under Rule 55(c), but also mandates the dismissal of this action: defendants' immunity.[6]  Where, as here, a party sues a foreign official in his or her "personal capacity," the question of immunity "is properly governed by the common law," rather than by the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1602-11 (1976).  Samantar v. Yousuf, 560 U.S. 305, 130 S.Ct. 2278, 2292 (2010); see also Hua Chen v. Honghui Shi, No. 09 Civ. 8920 (RJS), 2013 WL 3963735, at *3 (S.D.N.Y. Aug. 1, 2013) (noting that "Samantar did not foreclose the possibility that" a foreign official "may be entitled to immunity under common law").  Because the United States has declined to take a position with respect to defendants' purported immunity under the common law (Koplovitz Decl. Ex. 4), the Court may "decide for itself" whether such immunity exists.  Samantar, 130 S.Ct. at 2284 (quoting Ex parte Republic of Peru, 318 U.S. 578, 587

---

[6] Moreover, we note that the Foundation, and not plaintiff, is the party in fact to the contract. (Koplovitz Decl. Ex. 2.)  Therefore, to the extent that New York law controls, it would be far from clear whether plaintiff has standing.  See, e.g., Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that clearly evidence an intent to permit enforcement by the third party in question." (internal quotation marks and alteration omitted)).

6

(1943)) (internal quotation marks omitted); see also Heaney v. Gov't of Spain, 445 F.2d 501, 504-05 (2d Cir. 1971).

Doing so, we find that President Ma is immune from this Court's jurisdiction as a sitting head of state.  Under the common law doctrine of head-of-state immunity, "[a] head-of-state recognized by the United States government is absolutely immune from personal jurisdiction in United States courts unless that immunity has been waived by statute or by the foreign government recognized by the United States."  Gomes v. ANGOP, Angola Press Agency, No. 11 Civ. 580 (DLI), 2012 WL 3637453, at *7 (E.D.N.Y. Aug. 22, 2012) (quoting Lafontant v. Aristide, 844 F. Supp. 128, 131-32 (E.D.N.Y. 1994)) (internal quotation marks omitted).  In this case, it is undisputed that President Ma is the current head of state of Taiwan, which has not waived the President's immunity.  In this circumstance, application of the head-of-state doctrine serves to "promote comity" between the United States and Taiwan by ensuring that President Ma can perform his duties "without being subject to detention, arrest or embarrassment."  Yousuf v. Samantar, 699 F.3d 763, 769 (4th Cir. 2012) (internal quotation marks omitted).

Nevertheless, plaintiff suggests that President Ma is not entitled to head-of-state immunity because the United States withdrew diplomatic recognition of Taiwan in 1979.  See, e.g.,

7

Exec. Order No. 12143, 44 Fed. Reg. 37191, 1979 WL 211436 (June 22, 1979) (recognizing the People's Republic of China "as the sole legal government of China").  However, under the Taiwan Relations Act, 22 U.S.C. §§ 3301-3316 (1979), the United States continues to treat Taiwan as if de-recognition had not occurred.  See id. § 3303(b)(1) ("Whenever the laws of the United States refer or relate to foreign countries, nations, states, governments, or similar entities, such terms shall include and such laws shall apply with respect to Taiwan."); see also N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., 954 F.2d 847, 852 (2d Cir. 1992) (stating that "both Congress and the Executive Branch have, with rare clarity, determined that the United States must continue to honor" treaties with Taiwan, "despite official diplomatic derecognition").  Therefore, just as an "instrumentality" of Taiwan is eligible for foreign sovereign immunity under the FSIA, see Kao Hwa Shipping Co., S.A. v. China Steel Corp., 816 F. Supp. 910, 914 n.5 (S.D.N.Y. 1993), so too is the President of Taiwan entitled to head-of-state immunity under the common law.

Moreover, President Ma and Chief Lee are both immune from this Court's jurisdiction on the separate ground that plaintiff has explicitly predicated defendants' liability on official acts.  Under the common law, an individual foreign official is entitled to immunity "for acts performed in his official

capacity." Matar v. Dichter, 563 F.3d 9, 14 (2d Cir. 2009) (internal quotation marks omitted); accord Yousuf, 699 F.3d at 774. As plaintiff concedes, defendants were acting in their official capacities when they executed (and allegedly breached) the contract at issue here. (Compl. ¶¶ 30-31, 42-43, 46-47, 51). Thus, defendants' foreign official immunity imposes an independent barrier to the exercise of this Court's jurisdiction. See, e.g., Heaney, 445 F.2d at 504 (finding that plaintiff's concession that the individual defendant was "at all relevant times 'an employee and agent of the defendant Spanish Government'" sufficed to dispose of plaintiff's claim).

To avoid this result, plaintiff invokes the commercial activity exception to foreign sovereign immunity, as codified in the FSIA. See 28 U.S.C. § 1605(a)(2). However, even assuming, arguendo, that this exception permitted the Court to exercise jurisdiction over Taiwan, the Supreme Court has recognized that a foreign official's immunity under the common law is not coextensive with the state's immunity under the FSIA. Samantar, 130 S.Ct. at 2290; see also Br. of U.S. as Amicus Curiae at 8, Kensington Int'l Ltd. v. Itoua, Nos. 06-1663, 06-2216 (2d Cir. May 23, 2007) (stating that a foreign official's immunity at common law "did not merely match, but

rather exceeded, that of the state: even if the state could be sued for an official's acts under the restrictive theory, the official himself could not be").

There is authority for the proposition that the commercial activity exception does not apply to a foreign official who has undertaken a commercial transaction on behalf of his state. See Greenspan v. Crosbie, No. 74 Civ. 4734 (GLG), 1976 WL 841, at *2 (S.D.N.Y. Nov. 23, 1976) (deferring to the Department of State's suggestion of immunity for foreign officials involved in state commercial activity even though the state itself was not immune); see also Chimène I. Keitner, The Common Law of Foreign Official Immunity, 14 Green Bag 61, 68 (2010) ("Foreign officials will generally not bear individual responsibility for [commercial activities], and will thus be deemed immune from suit, even though the foreign state itself will not be immune under the 'restrictive theory' of sovereign immunity codified by the FSIA."). This result is particularly appropriate here, where plaintiff has not plausibly alleged any unlawful or ultra vires acts.

## CONCLUSION

For the foregoing reasons, plaintiff's motions for entry of default judgment (Dkt. Nos. 9 and 15) are denied, and defendants' motion to vacate the Clerk of Court's certificate of default and to dismiss the complaint (Dkt. No. 20) is

10

granted.[8] See, e.g., Swarna, 622 F.3d at 141 (stating that a district court "lack[s] jurisdiction to enter a default, much less a default judgment," against a defendant entitled to immunity); First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda Permanent Mission, 877 F.2d 189, 196 (2d Cir. 1989) ("A decision that a default judgment is void for want of jurisdiction must be accompanied by dismissal of the action.").

Dated:   New York, New York
         August 19, 2013

*/s/ Naomi Reice Buchwald*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[8] Because we find that defendants are immune from this Court's jurisdiction, we need not, and do not, address any other potential bases for dismissing this action, including improper service of process. Nonetheless, we note that, contrary to plaintiff's representations (Dkt. No. 4), no one in this Chambers advised plaintiff as to the validity of service. To the contrary, a law clerk in this Chambers simply referred plaintiff to the Department of State's website and to the Hague Convention on the Service of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

11

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for Plaintiff**

Ning Ye, Esq.
Law Office of Ning Ye
36-26A Union Street, #3-F
Flushing, NY 11354

**Attorneys for Defendants**

Deborah B. Koplovitz, Esq.
Peter I. Livingston, Esq.
Rosen & Livingston
275 Madison Avenue, Suite 500
New York, NY 10016

Thomas G. Corcoran, Jr., Esq.
Laina C. Lopez, Esq.
Berliner, Corcoran & Rowe, LLP
1101 Seventeenth Street, N.W., Suite 1100
Washington, D.C. 20036